UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW J. BREWER, Personal Representative of the Heirs and the Estate of PHILIP TYRONE BREWER; et al.,

Plaintiffs,

v.

DODSON AVIATION; et al.,

Defendants.

No. C04-2189Z

ORDER

This matter comes before the Court on Defendant Aero Accessories, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, docket no. 78. Having considered the parties' briefs, declarations, and exhibits thereto, including the pleadings of the parties in the parallel state court action, <u>Vandeventer v. Brewer</u>, Case No. 05-2-29675-5 SEA (King County Sup. Ct. filed Sept. 9, 2005), and the oral argument of counsel on July 21, 2006, the Court DENIES the motion.

## BACKGROUND

On or about November 25, 2003, a Beechcraft airplane, S35, with FAA Registration Number N10BX, took off from Arlington, Washington and was en route to California when it crashed near Scappoose Bay, Oregon, causing the instantaneous death of the pilot, Philip Tyrone Brewer, and three passengers aboard, namely Philip's wife Sondra Noel Brewer, and her two daughters from a prior marriage, Marissa and Elisse Vandeventer. Second Am. Compl. ("SAC"), docket no. 39, ¶¶ 21-23. Matthew J. Brewer, the personal representative of

ORDER - 1

the heirs and the estate of Philip Tyrone Brewer, and Robert Darrell Ross and Diana Ross, the personal representatives of the heirs and the estate of Sondra Noel Brewer ("Plaintiffs") bring this action in federal court to recover damages in tort.

Plaintiffs allege that the failure of a vacuum pump and/or other component parts of the airplane caused the accident. Id. ¶ 35. Companies who allegedly designed, manufactured, repaired, overhauled, remanufactured, sold, or installed this vacuum pump are named as defendants in this case, including Defendant Aero Accessories, Inc. ("Aero"). Aero now moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Mr. Timothy Henderson, the President of Aero since 1984, has submitted an amended declaration in support of Aero's motion. Henderson Am. Decl., docket no. 126, ¶ 1. Aero is a North Carolina corporation with its principal place of business in Gibsonville, North Carolina. Id. ¶ 2. Aero overhauled, serviced or repaired the aircraft accident vacuum pump in 1992, if at all, in the State of North Carolina, not in Washington. Id. ¶ 27. Aero sold the vacuum pump in 1992 to an Arizona purchaser, in a transaction which had no known relation to or contact with Washington. Id. ¶ 28. Aero had no knowledge the vacuum pump involved in this case would ever be taken to, sold or used anywhere in the State of Washington. Id. ¶ 29. While the vacuum pump that was involved in the accident was not sold directly into Washington, Aero does directly sell its pumps into Washington. See id. Ex. A at 15 (data showing $12,893.35 in direct sales of "air pumps" to Washington for years 1996-2005); see also id. ¶¶ 19, 21, 23 (describing total amount of direct sales into Washington for years 1996-2005).

Aero advertises in a few trade publications of national circulation, such as "Trade-A-Plane." Id. ¶ 8.

Aero maintains a website. Id. ¶ 14. Mr. Henderson characterizes the website as "passive rather than active," because "[v]isitors to the website may only browse products of

ORDER - 2

1  Aero Accessories, Inc., but cannot place any purchase order or otherwise buy any products
2  sold by Aero Accessories, Inc." id.; however, the website does have some elements of
3  interactivity in that it has an "Interactive Catalog," an ability for customers to check the
4  status of their order ("Check Order Status"), and an ability to contact Aero by email ("Email
5  Us"). See Aero Accessories, Inc. <http://www.aeroaccessories.com>. Aero also offers
6  customer support via its website by providing email addresses and toll-free numbers for its
7  customers, including specific help for its "dry air pump" customers. See Aero Accessories,
8  Inc., Dry Air Pumps <http://www.aeroaccessories.com/dryair.html>.

9  Since 2000, Aero has sold virtually all its products to Tempest Plus Marketing Group,
10 LLC ("Tempest"), which is a South Carolina Corporation with its principal place of business
11 in South Carolina. Henderson Am. Decl. ¶¶ 2, 17, 20. Between 2001 and 2005, Tempest
12 sold Aero's products to other distributors, none of which resided in Washington. Id. ¶ 20.
13 Mr. Henderson is a fractional owner of Tempest. Id. ¶ 1. Aero also sells to original
14 equipment manufacturers such as Cessna and Beech, none of which are located in
15 Washington. Id. ¶ 17.

16 **DISCUSSION**

  **A.     Burden of Proof**
17
18 Where a defendant moves to dismiss a complaint for lack of personal jurisdiction,
19 "[t]he plaintiff bears the burden of making a prima facie showing of jurisdiction." Raymond
20 v. Robinson, 104 Wn.App. 627, 633 (2001); see also MBM Fisheries, Inc. v. Bollinger
21 Mach. Shop and Shipyard, Inc., 60 Wn.App. 414, 418 (1991) ("When . . . the trial court's
22 ruling is based solely on a consideration of affidavits and discovery, only a prima facie
23 showing of jurisdiction is required."); Amoco Egypt Oil Co. v. Leonis Nav. Co., 1 F.3d 848,
24 850 (9th Cir. 1993) ("Where, as here, the district court bases its jurisdictional ruling on
25 affidavits and discovery materials without holding an evidentiary hearing, dismissal is
26

ORDER - 3

appropriate only if the plaintiff has failed to make a prima facie showing of personal jurisdiction.").

### B.  Specific Jurisdiction

Where, as here, there is no applicable federal statute governing personal jurisdiction, the Court applies the law of the state in which the district court sits.  Amoco Egypt Oil Co. v. Leonis Nav. Co., 1 F.3d 848, 850 (9th Cir. 1993); see also FED. R. CIV. P. 4(k)(1)(A); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).

Plaintiffs argue that specific jurisdiction over Aero exists under RCW 4.28.185, Washington's long-arm statute.  Under this statute, a Washington court may assert jurisdiction over a nonresident defendant only if the cause of action arises from the defendant's activities in Washington.  RCW 4.28.185(3).  Plaintiffs argue that jurisdiction is proper under either RCW 4.28.185(1)(a), which confers jurisdiction over causes of action arising from a nonresident defendant's "transaction of any business within this state," or RCW 4.28.185(1)(b), which confers jurisdiction over causes of action arising from a nonresident defendant's "commission of a tortious act within this state."  Except as limited by its terms, Washington's long-arm statute authorizes courts to exercise jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution.  Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 766-67, 771 (1989).

Analysis of jurisdiction under Washington's long-arm statute involves two questions: (1) whether the statutory language purports to extend jurisdiction, and (2) whether imposing jurisdiction would violate constitutional due process principles.  Grange Ins. Ass'n v. State, 110 Wn.2d 752, 756 (1989).  However, the Court may "regard the due process standard and the statutory standard under RCW 4.28.185 as a single inquiry."  Shute, 113 Wn.2d at 768.

In order to subject a nonresident defendant, such as Aero, to the in personam jurisdiction of Washington State under RCW 4.28.185, the following factors must coincide:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

ORDER - 4

> (2) the cause of action must arise from, or be connected with, such act or transaction; and
>
> (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

Shute, 113 Wn.2d at 767 (quoting Tyee Constr. Co. v. Dulien Steel Prods., Inc., 62 Wn.2d 106, 115-16 (1963)); Grange, 110 Wn.2d at 758 (same). "The first criterion outlines the statutory requirements of RCW 4.28.185(1)(a) and (b)." Smith v. York Food Machinery Co., 81 Wn.2d 719, 721 (1972). "The second expresses the limitations set forth in RCW 4.28.185(1) and (3)." Id. "The third criterion is not based upon the statute but enumerates several nonexclusive factual considerations to aid in determining whether the due process right of foreign corporations or nonresident defendants precludes the assumption of jurisdiction." Id. at 721-22.

This three-factor test is similar to the due process test established by the United States Supreme Court: "(1) that purposeful 'minimum contacts' exist between the defendant and the forum state, (2) that the plaintiff's injuries 'arise out of or relate to' those minimum contacts; and (3) that the exercise of jurisdiction is reasonable, that is, that jurisdiction be consistent with the notions of 'fair play and substantial justice.'" Grange, 110 Wn.2d at 758 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-78 (1985)). The first prong – purposeful minimum contacts – has also been described as requiring that the non-resident defendant "purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff succeeds in satisfying the first two prongs, the burden then shifts to the

ORDER - 5

defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Burger King, 471 U.S. at 476-78.

### 1. **Purposeful Act or Transaction / Purposeful "Minimum Contacts"**

Under Washington law, "the necessary minimum state contact exists if a nonresident manufacturer knowingly places its goods in the broad stream of commerce." Smith, 81 Wn.2d at 723 (upholding the exercise of specific jurisdiction over two Pennsylvania-based manufacturers of food processing machine who sold the machine to a company in Idaho, who, in turn, sold the machine into Washington). "In that event, the manufacturer is charged with knowledge that such conduct may have consequences in another state." Id.; see also Omstead v. Brader Heaters, Inc., 5 Wn.App. 258, 264-67 (1971), as adopted in 80 Wn.2d 720 (upholding the exercise of specific jurisdiction over Japanese manufacturer who sold a pipe to an intermediary in Japan knowing that it was destined for use in the United States).

Under federal law, there is a split of authority in the leading "stream of commerce" United States Supreme Court case, in which four justices concluded that the first due process element – "purposefulness" – is met merely by placing a product into the stream of commerce, while four other justices concluded that a plaintiff is required to show "additional conduct" directed toward the forum, such as "designing the product for market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 1033, 1035 (1987); see Grange, 110 Wn.2d at 761-62 (noting differences between state and federal law regarding stream of commerce theory).

In the present case, North Carolina-based Aero placed the accident vacuum pump into the broad stream of commerce by selling it to an Arizona purchaser. By selling it out-of-state with an awareness that its products are marketed and sold in Washington, Aero can be charged with knowledge that its transaction might have consequences in Washington. Smith,

ORDER - 6

81 Wn.2d at 723-25; Omstead, 5 Wn.App. at 264-67; cf. Oliver v. Am. Motors Corp., 70 Wn.2d 875, 889 (1967) (not charging Oregon-based automobile dealer, who sold automobile to local customer, with knowledge that his transaction might have out-of-state consequences); World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297-98 (1980) (no expectation that product would reach Oklahoma where distributor served a market limited to three states of the northeastern United States). Plaintiffs can also satisfy the higher burden to show "additional conduct" under Asahi Metal as a result of Aero's national advertising, interactive website and customer service, and direct sales of air pumps into Washington. See 480 U.S. at 1033. Aero also uses distributors who sell into Washington state. Henderson Am. Decl. ¶¶ 19-22 (noting that Aero's shift from direct sales to distributor sales has not significantly changed Aero's sales volume into Washington).

Although Plaintiffs argue that Aero committed a tortious act within Washington, the Court does not decide this issue. First, Plaintiffs' allegations regarding the commission of a tortious act are taken as true for the purposes of a jurisdictional motion. See Grange, 110 Wn.2d at 757 n.4 (declining to decide the issue of whether the defendant's acts were actually tortious, reasoning that the issue relates to the merits of the case, not to a motion to dismiss for lack of jurisdiction). Second, the injury need not have occurred in Washington for there to be personal jurisdiction over a defendant in Washington. Both the Washington Supreme Court and the Ninth Circuit have upheld jurisdiction in Washington where the defendant solicited business within the state even though the plaintiff's injury occurred outside the state, on a cruise ship in international waters off Mexico. See Shute, 113 Wn.2d at 764, 768-72; Shute, 897 F.2d at 379, 383-86.

The Court concludes that Aero has purposefully acted within Washington state and has purposefully availed itself of Washington's markets by placing the accident air pump into the broad stream of commerce, and by advertising, providing customer service, and directly and indirectly selling similar air pumps in Washington.

ORDER - 7

## 2. Cause of Action Must Arise From Act or Transaction / Injuries Must Arise Out of or Relate to Minimum Contacts

The Washington Supreme Court has adopted the "but for" test used by the Ninth Circuit to determine if there is a sufficient connection between a plaintiff's cause of action and a defendant's act or transaction within the state. Shute, 113 Wn.2d at 772. The Ninth Circuit has explained that "[u]nder this test, a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction." Shute, 897 F.2d at 385. In other words, "[t]he 'but for' test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum." Id. Because of the existence of the third "reasonableness" prong of the due process test, "[a] restrictive reading of the 'arising out of' requirement is not necessary in order to protect potential defendants from unreasonable assertions of jurisdiction." Id.

In a product liability action, an injury caused by a defective product is held to arise from the release of a product into the stream of commerce. See Hedrick v. Daiko Shoji Co., 715 F.2d 1355, 1358 (9th Cir. 1983) (upholding jurisdiction in Oregon over Japanese manufacturer who manufacturers for a world-wide market and where the injury occurred within the expected service area of the manufacturer). But for Aero's placement of the accident vacuum pump into the stream of commerce, the pump would not have made its way into Philip Brewer's airplane and the accident would not have occurred, under Plaintiffs' allegations in the Second Amended Complaint. See Shute, 897 F.2d at 386 ("In the absence of [defendant's solicitation of business in Washington], the [plaintiffs] would not have taken the cruise, and [the plaintiff's] injury would not have occurred."). Thus, there is a nexus between Plaintiffs' causes of action against Aero and Aero's placement of the vacuum pump into the stream of commerce. Accordingly, the Court concludes that the "but for" test has been satisfied.

ORDER - 8

### 3. **Traditional Notions of Fair Play and Substantial Justice / Reasonableness**

Under Washington law, "the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice." Shute, 113 Wn.2d at 767 (quoting Tyee Constr. Co. v. Dulien Steel Prods., Inc., 62 Wn.2d 106, 115-16 (1963)); Grange, 110 Wn.2d at 758 (same). Washington courts consider "the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." Id.

Under federal law, the Court balances these seven factors to determine whether the exercise of jurisdiction over Aero would be reasonable: (1) the extent of purposeful interjection; (2) the burden on the defendant to defend the suit in the chosen forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Shute, 897 F.2d at 386. "Once purposeful availment has been established, the forum's exercise of jurisdiction is presumptively reasonable." Id. "To rebut that presumption, a defendant must present a compelling case that the exercise of jurisdiction would, in fact, be unreasonable." Id. (internal quotations and citations omitted). Aero has made no effort to rebut the presumption of reasonableness. The Court believes that the federal and state court actions in Washington are the most efficient forum for judicial resolution of the dispute because this is where all of the other potentially liable defendants are adjudicating similar issues against the two sets of plaintiffs. The Court concludes that the exercise of jurisdiction over Aero is reasonable.

**C.   General Jurisdiction**

The Court does not reach the question of general jurisdiction because there is specific jurisdiction over Aero. To the extent that Aero relies on its low percentage of sales in Washington as a basis to defeat personal jurisdiction, that issue is only relevant to the analysis of general jurisdiction, not specific jurisdiction. See Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990), rev'd on other grounds 499 U.S. 585 (holding that the exercise of general jurisdiction would violate due process where only 1.29% and 1.06% of defendant's business was derived from residents of Washington in 1985 and 1986, respectively).

**CONCLUSION**

For the reasons outlined in this Order, the Court DENIES Defendant Aero Accessories, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, docket no. 78.

IT IS SO ORDERED.

DATED this 3rd day of August, 2006.

Thomas S. Zilly
United States District Judge