1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12

MATTHEW J. BREWER, Personal
Representative of the Heirs and the Estate of
PHILIP TYRONE BREWER; et al.,

Plaintiffs,

v.

DODSON AVIATION; et al.,

Defendants.

No.  C04-2189Z

ORDER

13
14
15
16
17
18
19
20
21
22

This matter comes before the Court on Defendant Parker Hannifin Corporation's ("Parker Hannifin") Motion for the Application of Ohio Law, docket no. 102, Defendant Aero Accessories, Inc.'s ("Aero") Motion in Support of Application of Foreign Law, docket no. 106, and Defendants Dodson Aviation and Dodson International Parts' (the "Dodson Defendants") Motion re: Choice of Law, docket no. 98.  Having considered the parties' briefs, declarations, and exhibits thereto, including the pleadings of the parties in the parallel state court action, Vandeventer v. Brewer, Case No. 05-2-29675-5 SEA ("King County Action"), and the oral argument of counsel on July 21, 2006, the Court enters the following Order.

23

## BACKGROUND

24

### A.    Federal Case

25
26

On or about November 25, 2003, a Beechcraft airplane, S35, with FAA Registration Number N10BX, took off from Arlington, Washington and was en route to California when

ORDER - 1

1   it crashed near Scappoose Bay, Oregon, causing the death of the pilot, Philip Tyrone Brewer,

2   and three passengers aboard, namely Philip's wife Sondra Noel Brewer, and her two

3   daughters from a prior marriage, Marissa and Elisse Vandeventer.  Second Am. Compl.

4   ("SAC"), docket no. 39, ¶¶ 21-23.  Matthew J. Brewer, the personal representative of the

5   heirs and the estate of Philip Brewer, and Robert Darrell Ross and Diana Ross, the personal

6   representatives of the heirs and the estate of Sondra Brewer ("Plaintiffs") bring this action in

7   federal court to recover damages in tort.[1]  Plaintiffs allege that the failure of a vacuum pump

8   and/or other component parts of the airplane caused the accident.  Id. ¶ 35.

9   **B.**      **Choice of Law Motions**

10          Parker Hannifin, Aero, and the Dodson Defendants have each moved for the

11   application of foreign law to the claims asserted against them.  For the purposes of these

12   choice of law motions, the Court takes the following facts as true, given that they are

13   undisputed at this time, although the Court acknowledges that some of these "facts" are mere

14   allegations from the Second Amended Complaint or are uncontroverted statements from the

15   parties' briefs.[2]  For the purposes of this Order, the Court has construed all other facts in the

16   light most favorable to Plaintiffs.

17   *//*

18   *//*

19   ──────────────────────

20          [1] The claims of the estates of Marissa and Elisse Vandeventer, and the claims of the
     natural father and stepmother, are pending in the related King County Action.

21          [2] Plaintiffs have argued that choice of law issues are not ripe for determination.  The

22   Court disagrees.  After a status conference on February 9, 2006, the parties proposed a
     briefing schedule for choice of law motions, which the Court approved on February 28,

23   2006.  Docket nos. 62, 65, 67.  Thus, the parties have had at least four months to develop a
     factual record for their choice of law motions.  The facts necessary to make a choice of law

24   determination – regarding place of injury, domiciles of the parties, and places of alleged
     misconduct – are undisputed.  Plaintiffs have failed to identify any areas of factual dispute

25   that justify a continuance of the Court's consideration of choice of law issues.  The Court

26   need not wait until trial to make a choice of law determination.  See Southwell v. Widing
     Transp., Inc., 101 Wn.2d 200, 207 (1984).

ORDER - 2

1.      **Place of Injury**

On or about November 25, 2003, the airplane piloted by Philip Brewer suffered mechanical and control problems such that it became uncontrollable, fell from the sky, broke up in flight, and impacted the ground near Scappoose Bay, Oregon, causing the deaths of Philip Brewer, Sondra Brewer, Marissa Vandeventer, and Elisse Vandeventer.  SAC ¶ 23; see Dodson Defs.' Answer, docket no. 48, ¶ 23 (admitting that "the aircraft departed from controlled flight, broke up at altitude instantaneously killing all on board, and that the wreckage and bodies impacted the ground over a substantial area of terrain near Scappoose Bay, Oregon"); Parker Hannifin's Answer, docket no. 50, ¶ 23 (admitting that "on or about November 25, 2003, an aircraft impacted the ground near Scappoose Bay Oregon, causing the death of Philip, Sondra, Marissa and Elisse."); cf. Aero's Answer, docket no. 47, ¶ 23 (denying allegations of SAC ¶ 23 only "as they may apply to this Defendant," thus admitting the facts alleged as to the death of Philip and Sondra Brewer in Oregon pursuant to FED. R. CIV. P. 8(d)).

2.      **Place Where Conduct Causing Injury Occurred**

Plaintiffs' claims against Parker Hannifin arise out of its alleged original design and/or manufacture of dry air vacuum pumps and related instructions and warnings.  SAC ¶¶ 12, 54-59.  The Parker Hannifin parts that made their way onto the overhauled vacuum pump were manufactured in the 1980s.  Parker Hannifin's Mot. at 1 n.1.  Plaintiffs do not dispute Parker Hannifin's assertion that any Parker Hannifin components that were ultimately incorporated by Aero, and perhaps others, into the overhauled vacuum pump were, and could only have been, manufactured by Parker Hannifin's Airborne Division in Elyria, Ohio. Parker Hannifin's Mot. at 6; accord Pls.' Opp'n, docket no. 112, at 6 and Franecke Decl., docket no. 113, at 2 ("Most of the original pieces of the assembly of the vacuum pump were designed and manufactured by Parker Hannifin/Airborne in Ohio prior to 1984"); Id. at 14 ("[D]iscovery has revealed that the design and warnings all came out of the state of Ohio").

1   Nor do Plaintiffs dispute Parker Hannifin's contention that any instructions or warnings

2   related to Parker Hannifin's vacuum pumps were developed, implemented in, and distributed

3   from, Ohio.  Parker Hannifin's Mot. at 6; Pls.' Opp'n at 14.  Plaintiffs do point out that

4   Parker Hannifin's Airborne Division has been continuously sending warnings, service letters,

5   and other materials into Washington, <u>see</u> Pls.' Opp'n, at 6, 14, and that Philip Brewer was on

6   Parker Hannifin's mailing list for such warnings and letters.  Franecke Decl. Ex. B.

7        Plaintiffs' claims against Aero arise out of its alleged rebuilding and/or overhauling of

8   the vacuum pump subsequent to its manufacture.  SAC ¶ 27.  In 1992, Aero overhauled

9   and/or repaired the vacuum pump in North Carolina and then sold it to a buyer in Arizona.

10  Aero's Mot. at 3, 6; <u>accord</u> Pls.' Opp'n, docket no. 110, at 6 ("In and around 1992,

11  Defendant Aero admittedly had purchased or acquired (from somewhere) various vacuum

12  pumps which were disassembled, cleaned, reworked and reassembled, using a random

13  multitude of different parts.  This action took place in North Carolina. . . . The pump was

14  then shipped to its Arizona distributor. . . .").

15       Plaintiffs' claims against the Dodson Defendants arise out of their alleged

16  maintenance and installation of the vacuum pump, without proper documentation and

17  without proper entries in logbooks.  SAC ¶¶ 27-28.  Robert Dodson, Jr., the President of

18  Dodson International Parts, Inc. and the Vice President of Dodson Aviation, Inc. declares the

19  following facts, which are uncontroverted by Plaintiffs.  On or about August 2001, Dodson

20  International Parts acquired a used 212CW vacuum pump, which was logged into inventory

21  at its Rantoul, Kansas facility.  Dodson Decl., docket no. 100, ¶ 5.  On or about November

22  2001, the subject 212CW vacuum pump was invoiced and sent to Dodson Aviation, at the

23  Ottawa, Kansas airport.  <u>Id.</u> ¶ 6.  On or about November 2001, Dodson Aviation's chief

24  mechanic installed the subject used vacuum pump in the airplane, which was then owned by

25  Clint Burkdoll and/or Burkdoll Construction LLC.  <u>Id.</u> ¶ 10.  Clint Burkdoll was not charged

26  for the used vacuum pump or its installation.  <u>Id.</u> ¶ 11.  All involvement of the Dodson

1    Defendants with the subject used vacuum pump, Clint Burkdoll and the airplane occurred

2    entirely within Kansas.  Id. ¶ 15.

3        **3.     Residence, Place of Incorporation and Place of Business of the**

4            **Parties**

5        Matthew J. Brewer, the personal representative of the heirs and the estate of Philip

6    Brewer, is a Washington resident.  SAC ¶ 16.  Robert Darrell Ross and Diana Ross, the

7    personal representatives of the heirs and the estate of Sondra Brewer, are Washington

8    residents.  SAC ¶ 19.  Philip and Sondra Brewer were Washington residents at the time of

9    their death.  Parker Hannifin's Mot., docket no. 102, at 7 ("[P]laintiffs' decedents were

10   residents of Washington"); Dodson Defs.' Mot., docket no. 98, at 7 ("[P]laintiffs reside in

11   Washington, as did their respective decedents.").

12       Parker Hannifin is incorporated in Ohio.  SAC ¶ 12; Parker Hannifin's Answer ¶ 12.

13   Parker Hannifin has its corporate headquarters in Ohio.  Parker Hannifin's Mot. at 6.  Parker

14   Hannifin's Airborne Division, the Division that designed and manufactured vacuum pumps,

15   is located in Elyria, Ohio.  Id.

16       Aero is incorporated in North Carolina and its principal place of business is in

17   Gibsonville, North Carolina.  SAC ¶ 11; Aero's Answer ¶ 11; Aero's Mot. at 2.

18       Dodson Aviation is incorporated in Kansas and its principal place of business is in

19   Ottawa, Kansas.  SAC ¶ 5; Dodson Defs.' Answer ¶ 5; Dodson Decl. ¶ 2.  Dodson

20   International Parts is incorporated in Kansas and its principal place of business is in Rantoul,

21   Kansas.  SAC ¶ 6; Dodson Defs.' Answer ¶ 6; Dodson Decl. ¶ 2.

22       **4.     Place Where Relationship, If Any, Between the Parties Is Centered**

23       Parker Hannifin sent warning letters from Ohio to Philip Brewer in Washington.  This

24   is the only evidence in the record of any direct contact between any of the moving

25   defendants and either of the Plaintiffs.  The Dodson Defendants' assertion that they had no

26   direct contact with Plaintiffs is uncontroverted.  See Dodson Decl. ¶¶ 12-14.

# DISCUSSION

## A.      Applicable Law

This is a diversity action under 28 U.S.C. § 1332.  "Federal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'"  Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005) (quoting Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002)).  Because this suit was filed in the Western District of Washington, the Court applies Washington's choice of law rules.

### 1.      Actual Conflict

In Washington, the "presumptive local law" applies unless there is "an actual conflict between the laws or interests of Washington and the laws or interests of another state." Seizer v. Sessions, 132 Wn.2d 642, 648-49 (1997); Rice v. Dow Chem. Co., 124 Wn.2d 205, 210 (1994); Burnside v. Simpson Paper Co., 123 Wn.2d 93, 100-04 (1994).  Thus, where no actual conflict is shown, Washington law will apply in this case.

A court "may be required to apply the law of one forum to one issue while applying the law of a different forum to another issue in the same case."  KELLY KUNSCH, 1 WASH. PRAC. § 2.21 (4th ed. 2006); see also Restatement (Second) of Conflict of Laws § 145 (1971) ("The rights and liabilities of the parties *with respect to an issue in tort* are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ."); Williams v. State, 76 Wn.App. 237, 241 (1994) ("[C]hoice-of-law depends upon which of two or more jurisdictions has the 'most significant relationship' to *a specific issue*.") (emphases added).  Examples of "important issues" that should receive separate consideration in a choice of law analysis include "whether the actor's conduct was tortious" (e.g., negligent), "whether contributory fault on the part of the plaintiff precludes his recovery in whole or in part," "the measure of damages," including "what limitations, if any, are imposed upon the amount of recovery," and "the circumstances in which two or more persons are liable to a third person for the acts of each other."

Restatement (Second) of Conflict of Laws §§ 156 (Tortious Character of Conduct), 164 (Contributory Fault), 171 (Damages), 172 (Joint Torts) (1971).

**2.      The "Most Significant Relationship" Test**

Where an actual conflict of laws exists, the Court must determine which state's law to apply.  To make this choice of law determination, the Court applies the "most significant relationship" test, as outlined in the Restatement (Second) of Conflict of Laws § 145 (1971). See Johnson v. Spider Staging Co., 87 Wn.2d 577, 580 (1976).[3]

The first step in determining which state has the most significant relationship to the occurrence and the parties is to take into account the following contacts:

(a)  the place where the injury occurred,

(b)  the place where the conduct causing the injury occurred,

(c)  the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d)  the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2) (1971).  "These contacts are to be evaluated according to their relative importance with respect to the particular issue" and are to be considered while applying the principles of the Restatement (Second) of Conflict of Laws § 6.[4]  Id.  The Court's "approach is not merely to count contacts, but rather to consider

---

[3] Plaintiffs urge the Court to consider the lex loci delicti choice of law rules from Ohio, Kansas, and North Carolina in the Court's analysis of those states' interests in having their substantive law applied to this case.  Because no Washington courts have taken this approach, the Court does not consider the choice of law rules of these other states in its analysis.

[4] The Section 6 principles include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.  Restatement (Second) of Conflicts of Laws § 6(2) (1971).  Washington courts focus on the four "contacts" in Section 145 over these

ORDER - 7

1   which contacts are most significant and to determine where these contacts are found."

2   Johnson, 87 Wn.2d at 581.[5]

3        If "the contacts are evenly balanced," the second step of the analysis is to consider

4   "the interests and public policies" of the concerned states.  Johnson, 87 Wn.2d at 582; see

5   also Myers v. Boeing Co., 115 Wn.2d 123, 133 (1990).  "The extent of the interest of each

6   potentially interested state should be determined on the basis, among other things, of the

7   purpose sought to be achieved by their relevant local law rules and the particular issue

8   involved."  Southwell, 101 Wn.2d at 204; see also Zenaida-Garcia, 128 Wn.App. at 263-64.

9   **B.   Choice of Law Analysis**

10       **1.   Parker Hannifin, Inc.**

11       Plaintiffs allege a single "product defect" claim against Parker Hannifin.  SAC ¶¶ 53-

12  59.[6]  Parker Hannifin moves the Court to apply Ohio law to numerous products liability and

13  damages issues.

14            **a.   Actual Conflicts**

15       Parker Hannifin argues that there are actual conflicts between Ohio's and

16  Washington's statutes of repose for product liability actions.  Parker Hannifin further argues

17  that there are other products liability and damages issues that are in conflict between the two

18

19  "principles" in Section 6 when conducting the choice of law analysis.

20       [5] In personal injury cases, the most significant contact is presumptively the place
    where the injury occurred.  See Zenaida-Garcia v. Recovery Syss. Tech., Inc., 128 Wn.App.
21  256, 261-62 n.17 (2005) ("Although there is [a] presumption that in personal injury cases,
    the law of the place of the injury applies, this presumption is overcome if another state has a
22  greater interest in [the] determination of a particular issue"); Martin v. Goodyear Tire &
    Rubber Co., 114 Wn.App. 823, 829-30 (2003); Restatement (Second) of Conflict of Laws §
23  146 (1971).  Where the injury occurs does not compel an application of that state's law now
    that Washington courts have adopted the most significant relationship test and rejected the
24  lex loci delicti choice of law rule.  Rice, 124 Wn.2d at 215; Johnson, 87 Wn.2d at 580.

25
         [6] Plaintiffs incorrectly assert that they have alleged a negligence claim and/or
26  negligent misrepresentation claim against Parker Hannifin.  Pls.' Opp'n at 10, 13, 15; see
    SAC ¶¶ 45-52.

ORDER - 8

1   states.  Plaintiffs have not made any effort to argue that there are no actual conflicts on the

2   issues raised by Parker Hannifin.  See Pls.' Opp'n at 3-4.

3                              **i.       Statute of Repose**

4        "A statute of repose terminates a right of action after a specific time, even if the injury

5   has not yet occurred."  Rice, 124 Wn.2d at 212.  Statutes of repose, unlike statutes of

6   limitation, are to be treated "as part of the body of a state's substantive law in making

7   choice-of-law determinations."  Id.

8        Ohio's ten-year product liability statute of repose provides that: ". . . no cause of

9   action based on a product liability claim shall accrue against the manufacturer or supplier of

10  a product later than ten years from the date that the product was delivered to its first

11  purchaser or first lessee who was not engaged in a business in which the product was used as

12  a component in the production, construction, creation, assembly, or rebuilding of another

13  product."  Ohio Rev. Code Ann. § 2305.10(c)(1).

14       In contrast, Washington's product liability statute of repose is not necessarily the

15  same for every product.  Washington's statute of repose provides that: "a product seller shall

16  not be subject to liability to a claimant for harm under this chapter if the product seller

17  proves by a preponderance of the evidence that the harm was caused after the product's

18  'useful safe life' had expired."  RCW § 7.72.060(1)(a).  Washington's statute of repose

19  provides a rebuttable presumption that the "useful safe life" expires "twelve years after the

20  time of delivery."  RCW § 7.72.060(2).  Washington courts have recognized an actual

21  conflict between Washington's statute of repose and other states' statutes of repose, which

22  conclusively terminate a right of action after a specified number of years.  See, e.g., Rice,

23  124 Wn.2d at 212-13 (recognizing a conflict between Washington's and Oregon's statutes of

24  repose); Zenaida-Garcia, 128 Wn.App. at 259 n.5 (same).  Thus, there is an actual conflict

25  between Ohio's and Washington's statutes of repose in the present case.

26

1                                    **ii.      Other Issues**

2          Parker Hannifin argues that there are other fundamental differences between Ohio and

3   Washington law that would apply to Plaintiffs' product defect claim.  First, Parker Hannifin

4   argues that Ohio does not apply the consumer expectation test for a design defect, whereas

5   this is one of the standard tests under which a design defect is analyzed in Washington.

6   Compare Ohio Rev. Code Ann. § 2307.75 (risk-benefit test) with RCW § 7.72.030(3)

7   (consumer expectation test).  However, this is not an actual conflict because Ohio has

8   codified the consumer expectation test as a factor to be considered in determining the

9   foreseeable risks associated with the design or formulation of a product.  See Ohio Rev.

10  Code Ann. § 2307.75(B)(5).

11         Second, Parker Hannifin argues that there is no negligent design claim in Ohio,

12  whereas Washington recognizes a negligent design claim.  Compare Ohio Rev. Code Ann.

13  §§ 2307.73, 2307.75 with RCW § 7.72.030(1).  There is an actual conflict between the

14  states' products liability acts regarding the existence of a negligent design claim.

15         Third, Parker Hannifin argues that assumption of risk is a complete bar to recovery in

16  Ohio, whereas express and implied primary assumption of risk remain complete defenses

17  only to negligence claims in Washington.  Compare Ohio Rev. Code Ann. § 2307.711(B)

18  (providing that "[e]xpress or implied assumption of the risk may be asserted as an affirmative

19  defense to a product liability claim") with Dorr v. Big Creek Wood Prods., 84 Wn.App. 420,

20  426-27 (1996) (negligence case discussing assumption of risk as being the equivalent of

21  finding no duty); see also Klein v. R.D. Werner Co., 98 Wn.2d 316, 319 (1982) (applying

22  assumption of risk to a products liability claim as "a damage-reducing factor" but not as a

23  complete bar to recovery).  There is an actual conflict between the states regarding the

24  assumption of risk doctrine as applied to a products liability claim.

25         Fourth, Parker Hannifin argues that the joint and several liability rules differ between

26  the two states.  In Ohio, a defendant may be jointly and severally liable for all compensatory

damages that represent economic loss in a tort action if the defendant was more than fifty percent at fault. Ohio Rev. Code Ann. §§ 2307.22-23. In Washington, product liability defendants are "jointly and severally liable for the sum of their proportionate shares of the claimant's total damages" if the claimant was not at fault. RCW § 4.22.070(1)(b); RCW § 4.22.015. Thus, there is an actual conflict between Ohio's and Washington's joint and several liability rules.

Fifth, Parker Hannifin argues that Ohio has a cap on non-economic damages, whereas Washington has no such cap. Compare Ohio Rev. Code Ann. § 2315.18(B)(2)(". . . non-economic loss that is recoverable in a tort action under this section to recover damages for injury or loss to person or property shall not exceed the greater of two hundred fifty thousand dollars or an amount that is equal to three times the economic loss . . ."); with Johnson, 87 Wn.2d at 583 (referring to "Washington's deterrent policy of full compensation" and "[u]nlimited recovery"). Thus, there is an actual conflict between Ohio and Washington regarding the cap on non-economic damages.

Sixth, Parker Hannifin argues that Ohio bars recovery if a claimant is more than fifty percent at fault, whereas Washington does not bar recovery but does diminish proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault. Compare Ohio Rev. Code Ann. §§ 2315.32-36 with RCW § 4.22.005. Thus, there is an actual conflict between Ohio and Washington regarding the consequences that flow from a plaintiff's contributory fault.

In conclusion, there are actual conflicts between the laws of Ohio and Washington regarding the states' respective statutes of repose, negligent design claims, assumption of risk doctrines, joint and several liability rules, cap on non-economic damages, and contributory fault rules. In light of these actual conflicts, the Court next determines which state has the most significant relationship to the occurrence and the parties.

1             **b.**     **Most Significant Relationship – Ohio or Washington?**

2             **i.**     **Place Where the Injury Occurred**

3        There is no dispute among the parties that Philip Brewer, Sondra Brewer, and her

4 daughters, died in Oregon.  Despite this fact, Plaintiffs attempt to argue that "the place where

5 the injury occurred" is Washington.  Pls.' Opp'n at 2-3.  Plaintiffs argue that the Brewers

6 were "first effected by their takeoff from Washington and being in the air with no hope of

7 return."  Id. at 3.  Plaintiffs rely on Comment (b) to the Restatement (Second) of Conflict of

8 Laws § 175, which provides:

9
> The place where the injury occurs is the place where the force set in motion by
> the actor first takes effect on the person.  This place is not necessarily that
10 > where the death occurs.  Nor is it the place where the death results in pecuniary
> loss to the beneficiary named in the applicable death statute.

11 Restatement (Second) of Conflict of Laws § 175 cmt. b (1971).[7]

12        This argument fails for two reasons.  First, Plaintiffs have submitted no evidence that

13 the vacuum pump failed in Washington, not Oregon, airspace or that the warnings sent by

14 Parker Hannifin were read, relied on, acted upon or implemented on the airplane in

15 Washington by pilot Brewer or anyone else.  See Pls.' Opp'n at 14, 15 (no citation to the

16 record).  And even if the Court assumes, for the purposes of this motion, that Philip Brewer

17 relied upon the warnings in Washington, there is no legal authority supporting the

18 proposition that this is where the *injury* occurred.  Second, Section 175 expressly states that

19 "the place where the injury occurs" is *not* where the death results in pecuniary loss to the

20 beneficiary.  Thus, the beneficiary's pecuniary loss in Washington is not a basis for

21 concluding that Parker Hannifin's actions caused Plaintiffs any injury in Washington.

22        The place where the injury occurred is Oregon.  However, the location of the deaths

23 in Oregon is fortuitous because the vacuum pump could just as easily have failed elsewhere

24

25        [7] At oral argument, for the first time, Plaintiffs argued that Parker Hannifin's failure to
warn was a continuing tort that occurred in Washington.  This argument was not briefed and,
26 in any case, a failure to warn does not appear to constitute a continuing tort under Washington
law.  See Doyle v. Planned Parenthood of Seattle-King County, 31 Wn.App. 126, 129 (1982).

1    along the route of the airplane that day.  Because "the place of injury can be said to be

2    fortuitous," this "place of injury" contact should "not play an important role in the selection

3    of the state of the applicable law."  Restatement (Second) of Conflicts of Law § 145 cmt. e

4    (1971); see also Frosty v. Textron, Inc., 891 F. Supp. 551, 557 (D. Ore. 1995) (concluding

5    that "[t]he fortuitous location of the [helicopter] crash site [in Washington] does not create a

6    substantial interest favoring application of Washington law").

7                    **ii.    Place Where the Conduct Causing the Injury Occurred**

8           In a products liability action, the "place where the conduct causing the injury

9    occurred" is the place where the defendant designed, manufactured, or was otherwise

10   involved with the product in question.  See Zenaida-Garcia, 128 Wn.App. at 263 n.20

11   (defective machine manufactured in Washington) (citing Perry v. Aggregate Plant Prods.,

12   786 S.W.2d 21, 25 (Tex. App. 1990) (defective silo manufactured in Texas)).  Parker

13   Hannifin designed and manufactured any parts that made their way into the overhauled

14   vacuum pump in Ohio.  Furthermore, Parker developed, implemented, and distributed

15   warnings related to its vacuum pumps in and from Ohio.  The injury-causing conduct

16   occurred in Ohio.

17                  **iii.    Residence, Place of Incorporation and Place of Business**

18          Parker Hannifin is incorporated in Ohio and has its principal place of business in

19   Ohio.  Plaintiffs (and their respective decedents) are Washington residents.

20                  **iv.    Place Where the Relationship, If Any, Between the Parties Is**

21                          **Centered**

22          Parker Hannifin's only direct contact with Plaintiffs stems from the warning letters

23   sent by Parker Hannifin's Ohio-based Airborne Division to Philip Brewer in Washington.

24   However, this does not lead to the conclusion that the relationship between Parker Hannifin

25   and Philip Brewer was centered in Washington.  At least one Washington court, in a product

26   defect action, has concluded that the place where the relationship is centered is the same as

1   the place where the conduct causing the injury occurred.  See Zenaida-Garcia, 128 Wn.App.

2   at 263 (concluding that "the conduct causing the injury, *and the place where the relationship*

3   *is centered*, is Washington," where the defendant designed and manufactured the trommels)

4   (citing Perry, 786 S.W.2d at 25).  In Perry, the Court of Appeals of Texas stated that "[t]he

5   relationship between the parties, if any, must center around the cause of action which is the

6   'design, manufacture and [sale]' of the silo without proper safeguards."  Perry, 786 S.W.2d

7   at 25.  In Perry, even though the silo had been transported to and assembled in Indiana,

8   where the injury ultimately occurred, the Perry Court concluded that the relationship was

9   centered in Texas, where the silo was designed, manufactured and sold.  See id. at 24-25.

10      Here, Plaintiffs allege that "Parker Hannifin, Inc. designed, manufactured, sold and

11  distributed" a defective vacuum pump, and "provided warnings . . . which were at variance to

12  and should have been included into the original notices, warnings, documentation associated

13  with the vacuum pump at the original time of design, manufacture . . . ."  SAC ¶¶ 12, 58.

14  Like the silo in Perry, the vacuum pump and the warnings were created in one state and sent

15  into another state.  Applying Zenaida-Garcia and Perry, the Court concludes that the

16  relationship between Parker Hannifin and Philip Brewer, to the extent there was one, was

17  centered in Ohio, where the vacuum pump and the warnings were created.  Parker Hannifin

18  had no direct contact or relationship with Sondra Brewer.

19                          **v.      Public Policies and Interests of Concerned States**

20      The first "place of injury" contact is neutral as to Ohio and Washington.  The second

21  "place where the conduct causing the injury occurred" contact favors Ohio.  The third

22  "domiciles" contact is neutral because the Washington residency of Plaintiffs and their

23  respective decedents is balanced out by the fact that Parker Hannifin is incorporated in Ohio

24  and has its principal place of business in Ohio.  The fourth "relationship" contact weakly

25  favors Ohio as to Philip Brewer and is neutral as to Sondra Brewer.  Accordingly, the most

26  significant contact is the place of the injury-causing conduct, which unequivocally favors

1   Ohio.  The Court concludes that Ohio has the most significant relationship to the occurrence

2   and the parties.

3          Assuming, arguendo, that the Court considers the contacts "evenly balanced" between

4   Ohio and Washington, the Court turns to the second step of the choice of law analysis to

5   determine which state has the stronger policy interests.  Plaintiffs argue that Washington has

6   a strong interest in fully compensating its residents for their injuries.  Pls.' Opp'n at 16.  The

7   Washington Supreme Court has acknowledged that compensating its residents for personal

8   injuries "is a real interest," but is not "an overriding concern."  Rice, 124 Wn.2d at 215-16;

9   see also Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) ("The fact . . . that

10  one of the parties is domiciled or does business in a given state will usually carry little

11  weight of itself.").  The Washington Supreme Court in Rice further stated that "residency in

12  the forum state alone has not been considered a sufficient relation to the action to warrant

13  application of forum law."  Rice, 124 Wn.2d at 216.  The Rice Court rejected the position

14  that Washington law should be applied "in all tort cases involving any Washington resident,

15  regardless of where all the activity relating to the tort occurred."  Id.

16         Washington's interest in allowing full recovery is also "to deter the kind of conduct

17  within its borders which wrongfully takes life."  Bush v. O'Connor, 58 Wn.App. 138, 145

18  (1990).  Here, Washington's interest is minimal because the injury-causing conduct did not

19  occur within its borders.  Cf. Johnson, 87 Wn.2d at 583 (concluding that Washington's

20  interest is strong where Washington manufacturers' conduct is at issue).  To the extent

21  Washington has an interest in deterring tortious conduct and encouraging all manufacturers –

22  both in-state and out-of-state manufacturers – to make safe products for consumers, see

23  Zenaida-Garcia, 128 Wn.App. at 264-65, Rice makes it clear that a plaintiff's residency in

24  Washington is not enough in a products liability action to elevate Washington's interests

25  above another state's interests, where the injury-causing conduct occurred in the other state.

26  Rice, 124 Wn.2d at 215-16.

ORDER - 15

1    Ohio's interest in this case is stronger.  As Plaintiffs readily admit, "Ohio['s] Statute

2    of Repose is the result of the Ohio Legislature's intent to govern businesses within its

3    boundaries and to generate and promote Ohio economy. . . . [I]t is intended to specifically

4    govern the claims brought against its manufacturers for conduct occurring within its borders,

5    presumably, to its citizens."  Pls.' Opp'n at 16.  Parker Hannifin's citation to the legislative

6    history of the Ohio Products Liability Act supports these statements and shows that Ohio's

7    statute of repose was designed to protect Ohio's businesses from the risk of unfair and stale

8    litigation.  Parker Hannifin's Mot. at 9 (citing Am. Sub. S.B. 80 §§ 3(A)(5), 3(c) (2004)).[8]

9    Parker Hannifin is an Ohio business that would be protected by Ohio's statute of repose.

10   Similarly, Ohio's interests in protecting its businesses would be served by applying Ohio's

11   assumption of risk doctrine, its joint and several liability rules, its cap on non-economic

12   damages, and its contributory fault rules to Plaintiffs' product defect claim against Parker

13   Hannifin.

14              c.      **Conclusion Re: Parker Hannifin**

15   Because Ohio has the most significant relationship to the occurrence and the parties

16   and also has the stronger interest in seeing its laws applied to the case, the Court will apply

17   the Ohio Products Liability Act, Ohio Rev. Code Ann. §§ 2307.71 et seq., including its rules

18   regarding design defect and assumption of risk, and Ohio's ten-year statute of repose, its

19   joint and several liability rules, its non-economic damages cap, and its contributory fault

20   rules to Plaintiffs' product defect claim against Parker Hannifin.

21   //

22   //

23

24   _____

25   [8] Parker Hannifin also argues that Ohio has an interest in applying the Ohio Product
     Liability Act's rule that a strict liability claim may be maintained only if the product is
     defective at the time it left the control of the manufacturer.  Parker Hannifin's Mot. at 11.

26   Because Parker Hannifin did not argue that there was an actual conflict regarding this issue,
     Ohio's interest in applying this rule of law is immaterial to the choice of law determination.

1          **2.     Aero Accessories, Inc.**

2          Plaintiffs allege a negligence claim and a product defect claim against Aero.  SAC ¶¶

3    45-48, 53-59.[9]  Aero moves the Court to apply North Carolina, or, in the alternative, Oregon

4    substantive law to issues related to Plaintiffs' product defect claim.[10]  The Court will not

5    apply Oregon law to any issues in this case because, as stated above, the only contact with

6    Oregon is the place of injury and that contact was fortuitous.  The Court next determines

7    whether there are any actual conflicts between North Carolina and Washington law and, if

8    so, which state has the most significant relationship to the occurrence and the parties.

9                    **a.     Actual Conflicts**

10          Aero argues that there are actual conflicts between North Carolina and Washington

11   law on two products liability issues.  First, Washington allows for strict products liability

12   causes of action, whereas North Carolina has statutorily prohibited strict liability for

13   products liability.  Compare RCW § 7.72.030(2) ("A product manufacturer is subject to strict

14   liability to a claimant if the claimant's harm was proximately caused by . . ."); Lunsford v.

15   Saberhagen Holdings, Inc., 125 Wn.App. 784, 786-88 (2005) ("Manufacturers *and sellers* of

16   unreasonably dangerous products are strictly liable for injuries to users and consumers of

17   those products.") with N.C. Gen. Stat. § 99B-1.1 ("There shall be no strict liability in tort in

18   product liability actions.").  Second, North Carolina's statute of repose terminates a right of

19   action after six years, whereas Washington's statute of repose is based upon the "useful safe

20   life" of the product, which is presumptively twelve years.  Compare N.C. Gen. Stat. § 1-

21   50(a)(6) with RCW § 7.72.060.  Plaintiffs have not made any effort to argue that there are no

22   actual conflicts on these issues.  Pls.' Opp'n at 3-4.  In light of these actual conflicts, the

23   _____

24          [9] Contrary to the parties' briefs, see Aero's Mot. at 3, Pls.' Opp'n at 10, Plaintiffs
     have not alleged a claim based on negligent misrepresentation against Aero.  See SAC ¶¶ 49-
25   52.

26          [10] Aero does not move to apply foreign law to Plaintiffs' negligence liability issues or
     to damages issues.  The Court will apply Washington law to these issues.

ORDER - 17

Court next determines which state has the most significant relationship to the occurrence and the parties.

**b.**   **Most Significant Relationship – North Carolina or Washington?**

**i.**   **Place Where the Injury Occurred**

For the same reasons as outlined above with regard to Parker Hannifin, the place where the injury occurred is Oregon.  However, this contact is not significant because the place of injury was fortuitous.

**ii.**   **Place Where the Conduct Causing the Injury Occurred**

In 1992, Aero overhauled and/or repaired the vacuum pump in North Carolina and then sold it to a buyer in Arizona.  The injury-causing conduct occurred in North Carolina. See Zenaida-Garcia, 128 Wn.App. at 263 n.20.

**iii.**   **Residence, Place of Incorporation and Place of Business**

Aero is incorporated in North Carolina and has its principal place of business in North Carolina.  Plaintiffs (and their respective decedents) are Washington residents.

**iv.**   **Place Where the Relationship, If Any, Between the Parties Is Centered**

To the extent that the place where the relationship is centered is the same as the place where the conduct causing the injury occurred, see Zenaida-Garcia, 128 Wn.App. at 263, this contact favors North Carolina.  However, because Aero had no direct contact with Plaintiffs, the Court concludes that there was no "relationship" between Aero and Plaintiffs.

**v.**   **Public Policies and Interests of Concerned States**

The first "place of injury" contact is neutral as to North Carolina and Washington. The second "place where the conduct causing the injury occurred" contact favors North Carolina.  The third "domiciles" contact is neutral because the Washington residency of Plaintiffs and their respective decedents is balanced out by the fact that Aero is incorporated in North Carolina and has its principal place of business in North Carolina.  The fourth

1    "relationship" contact is neutral.  Accordingly, the most significant contact is the place of the

2    injury-causing conduct, which unequivocally favors North Carolina.  The Court concludes

3    that North Carolina has the most significant relationship to the occurrence and the parties.

4    Assuming, arguendo, that the Court considers the contacts "evenly balanced" between North

5    Carolina and Washington, the Court turns to the second step of the choice of law analysis to

6    determine which state has the stronger policy interests.  For the same reasons as outlined

7    above with regard to Parker Hannifin, Washington's interest in fully compensating its

8    residents for their injuries "is a real interest," but is not "an overriding concern," Rice, 124

9    Wn.2d at 215-16, and its interest in deterring tortious conduct is strongest as to Washington

10   businesses.  Johnson, 87 Wn.2d at 583.  Because Aero is not a Washington business,

11   Washington's interest in regulating Aero's conduct is minimal.

12          On the other hand, the purpose of North Carolina's six-year statute of repose, and

13   presumably also its prohibition on strict liability in product liability actions, is to protect

14   North Carolina businesses, such as Aero.  See Boudreau v. Baughman, 86 N.C.App. 165,

15   172 (1987), rev'd on other grounds, 322 N.C. 331 (1988) (noting the state's policy "to

16   protect North Carolina manufacturers and designers as well as the North Carolina courts

17   from stale claims based on injuries occurring long after the purchase of the allegedly

18   defective product and long after a defendant participated in its manufacture or design" in

19   applying the repose statute); Tetterton v. Long Mfg. Co., 314 N.C. 44, 54 (1985) ("The

20   enactment of the statute of repose was generally intended to shield these manufacturers of

21   durable goods from 'open-ended' liability created by allowing claims for an indefinite period

22   of time after the product was first sold and distributed."); see also Hilburn v. Gen. Motors

23   Corp., 958 F.Supp. 318, 321 (E.D. Mich. 1997) ("North Carolina [has] a substantial interest

24   in encouraging more commercial activity and in affording defendant the protection provided

25   by [North Carolina's] statute of repose.") (quoting Farrell v. Ford Motor Co., 199 Mich.App.

26   81, 93 (1993)); Farrell, 199 Mich. App. at 93 ("North Carolina has an obvious and

1     substantial interest in shielding Ford from open-ended products liability claims" because

2     "Ford unquestionably generates substantial commerce within the State of North Carolina.").

3     North Carolina's interest in protecting its businesses outweighs Washington's interests in

4     fully compensating its residents and deterring tortious conduct of out-of-state businesses.

5     **c.**     <u>**Conclusion Re: Aero**</u>

6     Because North Carolina has the most significant relationship to the occurrence and the

7     parties and also has the stronger interest in seeing its laws applied to the case, the Court will

8     apply the North Carolina Products Liability Act, N.C. Gen. Stat. §§ 99B-1 <u>et</u> <u>seq.</u>, including

9     its prohibition on strict liability, and North Carolina's six-year statute of repose, to Plaintiffs'

10     product defect claim against Aero.

11     **3.**     <u>**Dodson International Parts and Dodson Aviation**</u>

12     Plaintiffs allege a negligence claim and a product defect claim against Dodson

13     International Parts and Dodson Aviation.  SAC ¶¶ 45-48, 53-59.  The Dodson Defendants

14     move the Court to apply Kansas law to three damages issues and two product liability issues.

15     <u>See</u> Amendment <u>Nunc</u> <u>Pro</u> <u>Tunc</u>, docket no. 104 (product liability issues).

16     **a.**     <u>**Actual Conflicts**</u>

17     First, Kansas caps non-economic damages in personal injury and wrongful death

18     actions at $250,000, whereas Washington law contains no similar damages cap.  Kan. Stat.

19     Ann. §§ 60-19a02(b), 60-1903(a).

20     Second, Kansas bars a plaintiff from recovering any damages if the plaintiff was more

21     than fifty percent at fault, whereas Washington does not bar recovery but does diminish

22     proportionately the amount awarded as compensatory damages for an injury attributable to

23     the claimant's contributory fault.  <u>Compare</u> Kan. Stat. Ann. § 60-258a(a) <u>with</u> RCW §

24     4.22.005.

25

26

ORDER - 20

1    Third, Kansas does not recognize joint and several liability under any circumstances,

2    whereas joint and several liability still exists in Washington if a plaintiff is not at fault.

3    Compare Kan. Stat. Ann. § 60-258a(d) with RCW § 4.22.070(1)(b).

4        Fourth, Kansas subjects a seller of a remanufactured product to strict liability under

5    the Kansas Products Liability Act ("KPLA") if the product is sold as being in "like new"

6    condition.  See Kan. Stat. Ann. §§ 60-3301 et seq. (KPLA not limited, by its terms, to new

7    products); Stillie v. AM Int'l, Inc., 850 F. Supp. 960, 962 (D. Kan. 1994) (holding seller in

8    chain of distribution following remanufacture subject to strict liability).  In contrast,

9    Washington's Products Liability Act excludes from the definition of "product seller:" "[a]

10   commercial seller of used products who resells a product after use by a consumer or other

11   product user: PROVIDED, That when it is resold, the used product is in essentially the same

12   condition as when it was acquired for resale."  RCW § 7.72.010(1)(c).

13       Fifth, although both Kansas and Washington have adopted a "useful safe life" statute

14   of repose, the presumption in Kansas is that the useful safe life expires ten years after the

15   time of delivery, whereas the presumption in Washington is that the useful safe life expires

16   after twelve years.  Compare Kan. Stat. Ann. § 60-3303(b)(1) with RCW § 7.72.060(2).

17   Plaintiffs argue that there is no conflict regarding the statutes of repose because the Dodson

18   Defendants' involvement with the vacuum pump in 2001 occurred within ten or twelve years

19   of the 2003 airplane crash.  See Pls.' Opp'n at 4.  The Court rejects Plaintiffs' argument

20   because the useful safe life begins at the "time of delivery" of a (manufactured or

21   remanufactured) product to its first purchaser under both states' laws, see Kan. Stat. Ann. §

22   60-3303(a)(1), RCW § 7.72.060(1)(a), which may have occurred as early as the 1992 sale of

23   the pump by Aero to the Arizona purchaser.[11]  Because it is possible that the airplane crashed

24   after the expiration of the presumptive useful safe life under Kansas law, but not under

25

26       ---

     [12] The Court does not make any findings of fact as to when the "time of delivery"
     occurred.

1  Washington law, there is an actual conflict between Kansas' and Washington's statutes of
2  repose in the present case.

3        Other than the statutes of repose issue, Plaintiffs have not made any effort to argue
4  that there are no actual conflicts on the issues raised by the Dodson Defendants.  See Pls.'
5  Opp'n at 4.  The Court concludes there are actual conflicts regarding the five issues raised by
6  the Dodson Defendants.  In light of these actual conflicts, the Court next determines which
7  state has the most significant relationship to the occurrence and the parties.

8             **b.    Most Significant Relationship – Kansas or Washington?**

9                  **i.    Place Where the Injury Occurred**

10       For the same reasons as outlined above with regard to Parker Hannifin, the place
11 where the injury occurred is Oregon.  However, this contact is not significant because the
12 place of injury was fortuitous.

13              **ii.    Place Where the Conduct Causing the Injury Occurred**

14       The acquisition of the vacuum pump by Dodson International Parts took place in
15 Kansas.  The installation of the vacuum pump by Dodson Aviation took place in Kansas.  All
16 involvement of the Dodson Defendants with the subject used vacuum pump, Clint Burkdoll
17 and the airplane occurred entirely within Kansas.  The injury-causing conduct occurred in
18 Kansas.  See Zenaida-Garcia, 128 Wn.App. at 263 n.20.

19             **iii.    Residence, Place of Incorporation and Place of Business**

20       Dodson International Parts and Dodson Aviation are both incorporated in Kansas and
21 have their principal places of business in Kansas.  Plaintiffs (and their respective decedents)
22 are Washington residents.

23          **iv.    Place Where the Relationship, If Any, Between the Parties Is**
24                              **Centered**

25       To the extent that the place where the relationship is centered is the same as the place
26 where the conduct causing the injury occurred, see Zenaida-Garcia, 128 Wn.App. at 263, this

1    contact favors Kansas.  However, because neither of the Dodson Defendants had any direct

2    contact with Plaintiffs, the Court concludes that there was no "relationship" between the

3    Dodson Defendants and Plaintiffs.

4                    **v.    <u>Public Policies and Interests of Concerned States</u>**

5        The first "place of injury" contact is neutral as to Kansas and Washington.  The

6    second "place where the conduct causing the injury occurred" contact favors Kansas.  The

7    third "domiciles" contact is neutral because the Washington residency of Plaintiffs and their

8    respective decedents is balanced out by the fact that the Dodson Defendants are incorporated

9    in Kansas and have their principal places of business in Kansas.  The fourth "relationship"

10   contact is neutral.  Accordingly, the most significant contact is the place of the injury-

11   causing conduct, which unequivocally favors Kansas.  The Court concludes that Kansas has

12   the most significant relationship to the occurrence and the parties.

13       Assuming, arguendo, that the Court considers the contacts "evenly balanced" between

14   Kansas and Washington, the Court turns to the second step of the choice of law analysis to

15   determine which state has the stronger policy interests.  For the same reasons as outlined

16   above with regard to Parker Hannifin and Aero, Washington's interest in fully compensating

17   its residents for their injuries "is a real interest," but is not "an overriding concern," <u>Rice</u>,

18   124 Wn.2d at 215-16, and its interest in deterring tortious conduct is strongest as to

19   Washington businesses.  <u>Johnson</u>, 87 Wn.2d at 583.  Because the Dodson Defendants are not

20   Washington businesses, Washington's interest in regulating the Dodson Defendants' conduct

21   is minimal.

22       The Washington Supreme Court in <u>Johnson</u> considered Kansas' interest in limiting

23   wrongful death damages.  <u>See</u> <u>Johnson</u>, 87 Wn.2d at 582-83.  Kansas limits wrongful death

24   damages "to protect defendants from excessive financial burdens" and "to eliminate

25   speculative claims and difficult computation issues."  <u>Johnson</u>, 87 Wn. at 582-83.  The

26   <u>Johnson</u> Court further explained: "This interest in preventing financial burdens and

1    exaggerated claims is primarily local; that is, a state by enacting a damage limitation seeks to

2    protect its own residents." Id.

3         In this case, unlike in Johnson, the Dodson Defendants are Kansas residents and the

4    application of Kansas' damages limitation would protect Kansas residents. Cf. Johnson, 87

5    Wn.2d at 583 (concluding that Kansas has no interest in applying its damages limitation to

6    nonresident defendants who are Washington corporations). Similarly, Kansas' fifty percent

7    rule barring recovery to a plaintiff who is more than fifty percent at fault benefits Kansas'

8    residents, such as the Dodson Defendants. The purpose of Kansas' strict several liability

9    was also to protect defendants, such as the Dodson Defendants, by only requiring them to

10   pay "their fair share of the loss." See Brown v. Keill, 224 Kan. 195, 203 (1978). Lastly,

11   Kansas also has a greater interest than Washington in regulating the conduct of Kansas-based

12   businesses through the application of its products liability laws.

13                    **c.    Conclusion Re: The Dodson Defendants**

14        Because Kansas has the most significant relationship to the occurrence and the parties

15   and also has the stronger interest in seeing its laws applied to the case, the Court will apply

16   the Kansas Products Liability Act, Kan. Stat. Ann. §§ 60-3301 et seq., including its strict

17   liability rules, and Kansas' statute of repose to Plaintiffs' product defect claim against the

18   Dodson Defendants, and will apply Kansas' cap on non-economic damages, its contributory

19   fault rules, and its strict several liability rules to both Plaintiffs' negligence claim and their

20   product defect claim against the Dodson Defendants.

21   **CONCLUSION**

22        The Court GRANTS Defendant Parker Hannifin Corporation's Motion for the

23   Application of Ohio Law, docket no. 102. The Court will apply the Ohio Products Liability

24   Act, Ohio Rev. Code Ann. §§ 2307.71 et seq., including its rules regarding design defect[12]

25   _____

26   [12] Although the Court has concluded that there is no actual conflict regarding Ohio and
     Washington states' application of the consumer expectation test, the Court declines to apply
     more than one state's products liability act to Plaintiffs' product defect claim as to any particular

ORDER - 24

1   and assumption of risk, and Ohio's ten-year statute of repose, its joint and several liability

2   rules, its non-economic damages cap, and its contributory fault rules to Plaintiffs' product

3   defect claim against Parker Hannifin.

4         The Court GRANTS Defendant Aero Accessories, Inc.'s Motion in Support of

5   Application of Foreign Law, docket no. 106.  The Court will apply the North Carolina

6   Products Liability Act, N.C. Gen. Stat. §§ 99B-1 et seq., including its prohibition on strict

7   liability, and North Carolina's six-year statute of repose, to Plaintiffs' product defect claim

8   against Aero.

9         The Court GRANTS Defendants Dodson Aviation and Dodson International Parts'

10   Motion re: Choice of Law, docket no. 98.  The Court will apply the Kansas Products

11   Liability Act, Kan. Stat. Ann. §§ 60-3301 et seq., including its strict liability rules, and

12   Kansas' statute of repose to Plaintiffs' product defect claim against the Dodson Defendants,

13   and will apply Kansas' cap on non-economic damages, its contributory fault rules, and its

14   strict several liability rules to both Plaintiffs' negligence and product defect claims against

15   the Dodson Defendants.

16         IT IS SO ORDERED.

17         DATED this 15th day of August, 2006.

18

19                                    _____

20                                    Thomas S. Zilly
                                      United States District Judge

21

22

23

24

25   defendant.  Accordingly, the Court will apply the consumer expectation test under Ohio law as
    to Parker Hannifin.  The Court takes the same approach in applying only one state's products
26   liability act, namely the state with the most significant relationship, to Plaintiffs' product defect
    claims against Aero and the Dodson Defendants.