UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW J. BREWER, Personal Representative of the Heirs and the Estate of PHILIP TYRONE BREWER; et al., <br><br> Plaintiffs, <br><br> v. <br><br> DODSON AVIATION; et al., <br><br> Defendants. | No.  C04-2189Z <br><br> ORDER |

This matter comes before the Court on Plaintiffs' Motion to Permit Plaintiffs to File Third Amended Complaint, docket no. 141, and Parker Hannifin Corporation's ("Parker") Motion for Summary Judgment, docket no. 142.  Having reviewed the parties' briefs, supplemental briefs, declarations, and exhibits, the Court enters the following Order.

# I. Plaintiffs' Motion to Permit Plaintiffs to File Third Amended Complaint, docket no. 141

Plaintiffs move to file an amended complaint to add a negligence claim under Ohio and federal law against Parker, in addition to their already plead product defect claim. Proposed Third Amended Complaint ("TAC"), docket no. 141-4, ¶¶ 60-63, at 18-19; see Second Amended Complaint ("SAC"), docket no. 39 ¶¶ 53-59.

## A. Fed. R. Civ. P. 15(a) Standard

Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Although the rule should be interpreted with "extreme liberality," United

ORDER - 1

States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981), leave to amend is not to be granted automatically. Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990). A court should consider the following factors in determining whether to grant leave to amend: (1) undue delay; (2) bad faith; (3) futility of amendment; (4) prejudice to the opposing party; and (5) whether the plaintiff has previously amended her complaint. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 n.3 (9th Cir. 1987).

### B.  Discussion

Parker argues that Plaintiffs should not be permitted to amend their complaint because of undue delay, prior amendments, and the futility of the proposed amendment.

#### 1.  Undue Delay

Plaintiffs assert that they have moved to amend their complaint "in a timely fashion only a few weeks after the Court announced its choice of law decisions." Pls.' Reply, docket no. 154, at 2. The Court's August 15, 2006 Order on choice of law issues provided no new basis for Plaintiffs to allege a negligence claim. There is nothing unique to Ohio law about Plaintiffs' proposed negligence claim. Plaintiffs have unduly delayed their allegation of a negligence claim against Parker.

#### 2.  Prior Amendments

Plaintiffs have already amended their complaint twice. Of particular noteworthiness is the Court's Order of November 23, 2005, docket no. 38, in which the Court granted Plaintiffs leave to amend their complaint to add Parker as a party to the lawsuit, even though the deadline for joining additional parties had passed. Now, almost one year later, Plaintiffs are moving to add a new claim against Parker. The Court has particularly broad discretion to deny leave to amend when Plaintiffs have previously amended their complaint. See Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

### 3. **Futility**

#### a. **Ohio Common Law Negligence Claim**

Parker argues that Plaintiffs' proposed negligence claim under Ohio common law is futile because the Ohio Products Liability Act abrogated all common law product liability causes of action. See Ohio Rev. Code § 2307.71(B) ("Sections 2307.71 to 2307.80 of the Revised Code [Ohio's Products Liability Act] are intended to abrogate all common law product liability causes of action."). Section 2307.71(B) went into effect on April 7, 2005. The Court's request for supplemental briefing asked the parties to address whether Section 2307.71(B) has any retroactive application to this case, where the accident occurred in November 2003. Minute Order, docket no. 155.

Under Ohio law, common law rules may be added to or repealed by the legislature. Bickle v. Bickle, 1982 WL 6099, at *2 (Mar. 9, 1982) (citing 9 Ohio Jurisprudence 2d 559, Common Law, Section 7 (". . . There is no property or vested right in any of the rules of the common law, as guides of conduct, and they may be added to or repealed by legislative authority.")). Although Article II, Section 28 of the Constitution of the State of Ohio states that "The general assembly shall have no power to pass retroactive laws," Article II "was designed to protect vested rights." Bickle at *3. "Ohio courts have generally held that a person has no vested interest in any rule of the common law." Haskins v. Bias, 441 N.E.2d 842, 844 (Ohio Ct. App. 1981); see also Bickle, at *3 (holding that "appellant does not have a vested right under the common law in effect at the time that she alleges the facts giving rise to [her claim] occurred"). Rather, there is only a "mere expectancy" of a common law claim, which is insufficient to prevent the application of a statute that abolishes a common law claim. See Haskins, 441 N.E.2d at 844-45.

On November 25, 2003, when the airplane crashed, Plaintiffs did not have a vested right under Ohio common law; they only had a "mere expectancy" of a common law claim. On April 7, 2005, the Ohio legislature abolished common law products liability claims.

ORDER - 3

1  Thus, on November 23, 2005, when Plaintiffs filed their Second Amended Complaint adding
2  Parker, and on August 28, 2006, when Plaintiffs filed their motion for leave to file a third
3  amended complaint alleging a common law claim against Parker, no such claim existed.  The
4  present case is distinguishable from Routzahn v. Garrison, 2006 WL 1984498 (Ohio Ct.
5  App. 2006), which was noted by the Court in the Minute Order requesting supplemental
6  briefing.  Routzahn recognized a common law negligent design claim for an injury that arose
7  in 2002 even though "the General Assembly eliminated common law product liability causes
8  of action effective April 7, 2005."  Unlike here, the Routzahn case was filed in 2004, prior to
9  the effective date of the statute.

10    Plaintiffs do not challenge Parker's contention that Section 2307.71(B) abrogates all
11 common law unvested claims.  Pl.'s Suppl. Br., docket no. 165, at 5 ("That may be so for
12 unvested, but not for vested claims."); id. at 10 ("If this were a straight common law
13 negligence claim, Plaintiffs' review of the law would seem to indicate that Ohio Rev. Code
14 § 2307.71(B) would abrogate any common law claim.").  Plaintiffs then argue that they have
15 a vested negligence claim under federal law, an issue that is addressed below.

16    Accordingly, Plaintiffs' proposed negligence claim under Ohio common law is futile
17 because, as of April 7, 2005, Ohio Rev. Code § 2307.71(B) abrogated Plaintiffs' negligence
18 claim under Ohio common law.[1]

19 **b.    Federal Negligence Claim**

20    Plaintiffs' supplemental briefing asserts that Plaintiffs should be granted leave to
21 allege a negligence claim under the Federal Aviation Act and "Federal Aviation
22 Regulations."  As previously mentioned, Plaintiffs' proposed Third Amended Complaint
23 alleges that Parker had a duty "pursuant to federal aviation statutes, codes and regulations."
24 TAC ¶ 62.  *Plaintiffs have not provided any specific regulations or statutory sections for*
25 *their asserted cause of action*.  As noted above, Plaintiffs admit that Section 2307.71(B)

26 ───────────────

[1] The Court does not reach the merits of the other futility arguments raised by Parker.
ORDER - 4

abrogates all common law unvested claims, but then Plaintiffs argue that they have a vested right under the Federal Aviation Act and Federal Aviation Regulations.

Plaintiffs have failed to cite any case law that shows that the Federal Aviation Act or related regulations create a private right of action. The case law relied upon by Plaintiffs shows that state law causes of action are not preempted by the Federal Aviation Act, but that is not relevant to Plaintiffs' assertion of a federal cause of action. Indeed, these cases explain the limited remedial powers of the Federal Aviation Administration ("FAA") and explain that state law remedies would enhance the safety purposes of the Federal Aviation Act. See, e.g., Abdullah v. Am. Airlines, Inc., 181 F.3d 363, 375-76 (3d Cir. 1999) ("Even though we have found federal preemption of the standards for aviation safety, we still conclude that the traditional state and territorial law remedies continue to exist for violations of those standards. . . . *[T]here is no federal remedy for personal injury or death caused by the operation or maintenance of aircraft to be found in the [Federal Aviation Act] itself.*") (emphasis added) (citing In re Mexico City Aircrash, 708 F.2d 400, 408 (9th Cir. 1983) ("[T]he Federal Aviation Act does not contain an implied private right of action.")); Sunbird Air Servs., Inc. v. Beech Aircraft Corp., 789 F.Supp. 360, 362-63 (D. Kan. 1992) ("[T]he FAA's remedial powers are limited to cease and desist orders which can only proscribe future violations. The FAA does not have the power to assess damages for past wrongs.") (internal citations omitted); see also Spinner v. Verbridge, 125 F.Supp.2d 45, 53 (E.D.N.Y. 2000) (concluding that there is no implied private right of action under the Federal Aviation Act and noting that negligence is "a traditional province of state law.").

Accordingly, Plaintiffs' proposed negligence claim under federal law is futile.

**C.     Conclusion Re: Plaintiffs' Motion to Amend**

The Court DENIES Plaintiffs' Motion to Permit Plaintiffs to File Third Amended Complaint, docket no. 141, because of undue delay, prior amendments, and the futility of Plaintiffs' proposed amendment.

ORDER - 5

1  **II.    Parker Hannifin Corporation's Motion for Summary Judgment, docket no. 142**

2  Parker moves for summary judgment on Plaintiffs' product defect claim. Parker

3 argues that it is entitled to summary judgment for four reasons. Parker cites Plaintiffs'

4 admissions from Plaintiffs' briefs, in addition to other evidence, to support its arguments.

5 Plaintiffs are bound by their counsel's admissions. Town of N. Bonneville v. Callaway, 10

6 F.3d 1505, 1509 (9th Cir. 1993) ("In the absence of egregious circumstances, parties are

7 generally bound by the admissions of their attorney, including oral admissions.").

8  **A.    Ohio's Ten-Year Statute of Repose**

9  Parker's first argument in support of its summary judgment motion is that Ohio's ten-

10 year statute of repose bars Plaintiffs' claim. "[N]o cause of action based on a product

11 liability claim shall accrue against the manufacturer or supplier of a product later than ten

12 years from the date that the product was delivered to its first purchaser. . . . " Ohio Rev.

13 Code § 2305.10(C)(1). A similar statute bars wrongful death actions based on product

14 liability claims. Ohio Rev. Code § 2125.02(D)(2) ("[N]o cause of action for wrongful death

15 involving a product liability claim shall accrue against the manufacturer or supplier of a

16 product later than 10 years from the date that the product was delivered to its first

17 purchaser."). The parts of the vacuum pump that were manufactured by Parker were

18 originally manufactured prior to 1984, as admitted by Plaintiffs. Ex. A[2] (Pls.' Opp'n to

19 Parker, docket no. 112) at 6 ("Most of the original pieces of the assembly of the vacuum

20 pump were designed and manufactured by Parker Hannifin/Airborne[3] in Ohio prior to

21 1984"); Ex. B (Franecke Decl., docket no. 113) at 2 (same); see also Ex. F (Scholz[4] Dep.) at

22 70, 75-76, 93, 95, 137-38, 144, 189-90, 341 (Parker's determination that different parts on

23

24  [2] The lettered exhibits are attached to the Walsh Decl., docket no. 143.

25  [3] "Airborne" refers to Parker Hannifin Corporation's Airborne Division.

26  [4] Daniel Scholz has been employed by Parker since 1984, and has worked in different capacities including as a patent coordinator, senior project engineer, and air safety investigator. Ex. F (Scholz Dep.) at 10-15.

ORDER - 6

the pump were manufactured prior to 1984 or 1985). At oral argument on the choice of law motions, Plaintiffs conceded that Ohio's statute of repose bars the claim against Parker. Ex. J (July 21, 2006 Transcript) at 43 (Q (by the Court): What you're saying is – they're [Parker] outside the statute of repose, so if it [Ohio's statute of repose] applies, there's no claim against them. A (by Mr. Franecke): That's correct.).

Plaintiffs argue that Ohio's ten-year statute of repose is unconstitutional under two provisions of the Ohio Constitution: (1) the right to remedy provision at Article I, Section 16, which states: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay," and (2) the prohibition on retroactive laws at Article II, Section 28, which states, in part: "The General Assembly shall have no power to pass retroactive laws . . . ." Plaintiffs primarily rely on a 1994 Ohio Supreme Court case, Brennaman v. R.M.I. Co., 639 N.E.2d 425 (Ohio 1994), which held a statute of repose pertaining to construction defects to be unconstitutional as violating the state constitutional right to remedy provision. Plaintiffs also rely on a 1998 case from the United States District Court for the Southern District of Ohio, Wells v. Thomson Newspaper Holdings, Inc., 183 F.R.D. 225, 229-31 (S.D. Ohio 1998), which held that Ohio's statute of repose, Ohio Rev. Code § 2305.10(C)(1), was unconstitutional as violating the state constitutional prohibition on retroactive laws. Parker responds that the General Assembly adopted new policy grounds for this statute of repose and expressed its intent to supplant the decision in Brennaman. See Parker's Reply, docket no. 167, at 10 (citing 2004 S 80 § 3(C), (E)).

The Court does not reach the issue of whether Ohio's statute of repose is constitutional under the Ohio Constitution because the Court dismisses Plaintiffs' product defect claim on other grounds.

### B. No Product Identification

Parker's second argument in support of its summary judgment motion is that there is no product identification. "Ohio has adopted the principle of products liability law that a plaintiff must prove, as an essential element of the case, that a defendant manufacturer actually made the particular product that caused the injury." Brenneman v. G.A.F. Corp., No. 90-C-27, 1991 WL 217010, at **3-4 (Ohio Ct. App. Oct. 24, 1991); see also e.g., Martinez v. Yoho's Fast Food Equip., No. 02AP-79, 2002 WL 31752047, at *6 (Ohio Ct. App. Dec. 10, 2002) (granting summary judgment to defendant where "plaintiffs cannot show [defendant] manufactured the hose assembly" at issue). The term "manufacturer" is defined under the Ohio Products Liability Act as "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." Ohio Rev. Code § 2307.71(A)(9).

Parker asserts that Defendant Aero Accessories, Inc. ("Aero"), not Parker, manufactured the vacuum pump that was on the airplane at the time of the accident, and Parker points to Plaintiffs' counsel's assertion that Aero overhauled the pump in 1992.[5] Plaintiffs' counsel's assertion that Aero is a manufacturer is not an admission that Parker is not a manufacturer. Whether or not Aero is a manufacturer is not an issue presently before the Court.

A Parker vacuum pump contains approximately 34 individual components or pieces, which are manufactured to proprietary specifications, and then sold only as a complete integrated unit. Ex. F (Scholz Dep.) at 47-48, 377; Ex. E (T. Henderson[6] Dep.), Vol. III at 108-11, 174. Plaintiffs' counsel has made a representation to the Court that "some of the

---

[5] Aero filed a brief in opposition to Parker's motion, docket no. 160, to which Parker filed a reply, docket no. 166. The Court does not consider Aero's brief because Aero has no claims against Parker and no standing to oppose Parker's motion for summary judgment.

[6] Timothy Henderson is the President, owner and sole director of Defendant Aero. Ex. E (T. Henderson Dep.) Vol. I at 9-10.

ORDER - 8

1 parts [found in the vacuum pump] were originally manufactured by [Parker]." Ex. A (Pls.'
2 Opp'n to Parker) at 11. The testimony of Mr. Scholz supports such a conclusion and Parker
3 does not dispute this fact.

4 Accordingly, the Court rejects Parker's "no product identification" argument because
5 it is undisputed that at least some of the parts of the pump – i.e., some of the "components of
6 a product" under Ohio Rev. Code § 2307.71(A)(9) – were originally manufactured by
7 Parker.

8     **C.**    **Substantial Change**

9 Parker's third argument in support of its summary judgment motion is that Plaintiffs
10 cannot show that the vacuum pump originally manufactured by Parker remained substantially
11 unchanged after it left Parker's facility. "It is well settled that a substantial alteration
12 subsequent to the manufacture and sale of the product will relieve the manufacturer from
13 liability and will support summary judgment in favor of the manufacturer." Zeek v.
14 Taylor-Dunn, 1998 WL 372418 at *5 (Ohio Ct. App. 1998); see Temple v. Wein United,
15 Inc., 364 N.E.2d 267, 268-69 (Ohio 1977). "Substantial change is defined as *any* change
16 which increases the likelihood of a malfunction, which is the proximate cause of the harm
17 complained of, and which is independent of the expected and intended use to which the
18 product is put." Kobza v. General Motors Corp., 580 N.E.2d 47, 49 (Ohio Ct. App. 1989)
19 (emphasis in original).

20 In support of its assertion that the pump sold by Parker was substantially changed,
21 Parker points to Aero's overhaul of the pump in 1992. Plaintiffs have admitted to Aero's
22 extensive overhaul of the pump and have accused Aero of misrepresenting the pump as being
23 one manufactured by Parker's Airborne Division. Ex. A (Pls.' Opp'n to Parker) at 11
24 ("[W]hile the overall design of the subject vacuum pump was Airborne's and some of the
25 parts were originally manufactured by them, . . . [t]he reassembly of all the parts by Aero
26 making up the subject vacuum pump . . . was not Parker's original manufacture any more

ORDER - 9

than a can of corn contains identifiable kernels from a specific ear of corn"); Ex. C (Pls.' Opp'n to Juris., docket no. 127) at 6 ("The subject vacuum pump in this case . . . is made up of a variety of used parts."); id. at 16 ("It is [Aero's] pump which was mislabeled, bogus serial numbered, and represented as being the manufacturer of another company [i.e., Parker]. . . "); id. at 14 ("[T]he labeling misled Plaintiff to believe it was manufactured by Defendant Parker Hannifin/Airborne, yet had a bogus serial number on it that had no relationship to the manufacturer"); id. at 17 ("Plaintiff Brewer was using Defendant Aero's product in the state of Washington for over a year."); id. at 18 ("[I]t is reasonable that it [Aero] . . . answer for the failure of one of its products."); Ex. D (Pls.' Opp'n to Aero) at 11 ("Factually, Aero disassembled several vacuum pumps, reworked them, cleaned them up, added a few new parts and reassembled vacuum pumps from numerous disassembled others. . . . Aero then put a label on the pump stating that it was, in fact, a Parker Hannifin/Airborne manufacture . . . "); id. at 6 (discussing Aero's practice of disassembling, cleaning, reworking and reassembling vacuum pumps from "a random multitude of different parts.").

The overhaul process has been described in detail by Aero's officers. Aero buys, or trades for, used or broken vacuum pumps of various makes, models and manufacturers, disassembles the pumps, chemically strips components, grinds and sands components, puts usable components into bins, and then reassembles the components into pumps according to their own FAA-approved specifications. Ex. E (T. Henderson Dep.) Vol. I at 24, Vol. II at 67-70, 96-97, 135-43, 149-50, Vol. III at 54-55, 73-75, 115, 127-28, 136, Vol. IV at 13-22, 51-52, 111, 136, 139; Ex. I (C. Henderson[7] Dep.) at 48-49, 147-50, 152-57. The incoming pumps lose their identity because they are torn down to their component parts. Ex. I (C. Henderson Dep.) at 48-49 (Q: It [a pump] loses its identity, obviously, because you're tearing it down to its component parts; is that right? A: Yes. . . . Q: . . . do you track the

---

[7] Charles T. Henderson has been employed by Aero since 1984, and is an officer of Aero. Ex. I (C. Henderson Dep.) at 6, 12. Aero is owned by his brother, Timothy Henderson. Id. at 6.

ORDER - 10

incoming serial numbers . . .?  A: Not after we get them [the vacuum pumps] in and strip everything down, and it just becomes pieces.).

The vacuum pump found in the airplane was indisputably overhauled by Aero.[8]  Ex. L (Aero's Test Report for subject vacuum pump dated 4-22-92); Ex. K (NTSB Factual Report) at 1e; Ex. I (C. Henderson Dep.) at 156-57 (testifying that the vacuum pump involved in this accident was put together from bin pieces added together).  Parker's Mr. Scholz examined the subject vacuum pump and determined that some of the parts were originally manufactured by Airborne while others were not, and some of Parker's parts were modified.  Ex. F (Scholz Dep.) at 115, 117, 137, 156-57, 249-52.  Aero's Charles Henderson admits that, in the vacuum pump that ended up on the airplane, the rotor, the vanes, the bushing, the coupling, and the external spine were new, that other parts were used, and that certain used parts were Airborne parts.  Ex. E (T. Henderson Dep.) Vol. II at 139-40; see also Vol. IV at 14-22, 51-52, 111, 136; Ex. I (C. Henderson Dep.) at 156-57.  He describes how the bushing on the Airborne front cover would have been taken out and thrown away, how the stator is cleaned, chemically stripped of anodize, ground, and reanodized such that the internal dimensions change, and how the rotor is made larger.  Id. at 140-42.

Parker does not authorize overhauls of its pumps.  Ex. F (Scholz Dep.) at 301-02 (testifying that Parker does not authorize any individual or corporation to affix a label to an overhauled pump that says that it is a Parker manufactured pump); Ex. Q (Parker's "Caution Do Not Overhaul" stickers).  In fact, Parker has corresponded with the FAA to dissuade them from allowing overhaulers like Aero to overhaul the Airborne pumps, but the FAA has refused to stop the overhaul of Airborne pumps.  Franecke Decl., docket no. 159, Ex. 109 (correspondence), Ex. B (Hruska Dep.) at 39-62.

---

[8] Parker has also provided uncontroverted evidence that there was a second rebuild of the pump after Aero's 1992 overhaul, in which the pump's carbon vanes, rotor, and flex coupling were replaced.  Ex. E (T. Henderson Dep.) Vol. II at 203-05, 209-10; Vol. III at 196-97; Vol. IV at 54, 76-77, 135.

ORDER - 11

Aero admits that it was aware that Parker did not authorize the overhaul of its pumps. Ex. E (T. Henderson Dep.) Vol. II at 157-59, 164 ("I'm aware that Parker did not authorize [overhaul], yes."); Ex. O (Aero Promotional Publication asserting the safety of overhauled pumps and rejecting Parker's arguments against overhauled pumps). Aero also admits that Parker had no role in designing the overhauled pump. Ex. E (T. Henderson Dep.) Vol. III at 108-11 (Q: . . . when you [Aero] overhaul a pump, are you following Parker's design? A: No . . . We do not go by Parker's tolerances and specifications when we overhaul the pump. We go by an FAA-approved spec . . . ); Ex. I (C. Henderson Dep.) at 156 (Q: Were you ever involved with Parker Hannifin with regard to your process spec? A: No. Q: Did Parker Hannifin participate in any way with Aero Accessories in getting the process spec? A: Not that I'm aware of.).

The Ohio Supreme Court has held that "[w]hen a product is totally remanufactured or rebuilt, it becomes, for all intent and purposes, a new product." Anderson v. Olmsted Utility Equipment, Inc., 573 N.E.2d 626, 629 (Ohio 1991). The Ohio Court of Appeals has held that a product is not in substantially the same condition from the time of manufacture until the time of injury, and granted summary judgment for a defendant manufacturer, where the plaintiffs could not prove the condition of the product at the time it left the control of the defendant, and where there was at least one intervening owner who "substantially overhauled" the product, and added new parts and new warning labels to it. See Burkey v. Teledyne Farris, No. 1999AP030015, 2000 WL 968695 at ** 7-8 (Ohio Ct. App. June 30, 2000); see also Abbott v. U.S.I. Clearing Corp., 477 N.E.2d 638, 642 (Ohio Ct. App. 1984) (affirming summary judgment in favor of an original manufacturer of a punch press where the press had been disassembled, reassembled and altered). The Burkey Court reasoned that the original manufacturer "cannot be held liable for injuries resulting from the defective design of a product it did not design, manufacture, or put into the commercial setting." 2000 WL 968695 at *9. The present case is analogous to Burkey – Plaintiffs cannot prove the

condition of the vacuum pump when it left Parker's facility in 1984, and it is undisputed that Aero is an intervening owner who substantially overhauled the product by disassembling old pumps, modifying the component parts in various ways, and reassembling pumps made up of old and new parts, with new labels affixed (e.g., serial number).

Plaintiffs argue that Parker has failed to show that Aero's overhaul led to a "substantial" change. Plaintiffs assert that Aero's actions only result in one-thousandth-of-an-inch change, see Pls.' Resp. at 12, but Mr. Scholz's testimony cited for that proposition indicates that this one thousandth-of-an-inch change was only with regard to one part and that other parts were changed in other ways that did not meet Parker's specifications. Furthermore, it is undisputed that non-Airborne parts were used in the vacuum pump that was on the airplane. The addition of new parts is a significant alteration to an Airborne pump, which is not intended to be overhauled and which is designed to function as an integrated unit with all Airborne parts.

Accordingly, the Court GRANTS Parker's summary judgment motion on the grounds that Plaintiffs have provided no evidence to raise a genuine issue of material fact that the pump that left the Parker facility in 1984 was not substantially changed by Aero's overhaul process.

**D.    General Aviation Revitalization Act's ("GARA") Eighteen-Year Statute of Repose**

Parker's fourth argument in support of its summary judgment motion is that GARA prohibits parties from bringing civil actions against aircraft component manufacturers eighteen years after a part was introduced into the market. Specifically, GARA provides that "no civil action for damages for death or injury to persons . . . arising out of an accident involving a general aviation aircraft may be brought against . . . the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred" eighteen years after the date of the delivery of the

ORDER - 13

aircraft by the manufacturer to its first purchaser or lessee. GARA, § 2(a)(1), 3(3), Pub.L. No. 103-298, 108 Stat. 1552 (1994), as amended Pub. L. No. 105-102, § 3(e), 111 Stat. 2215 (1997) (codified at 49 U.S.C. § 40101 note (1997)).

Plaintiffs have admitted that Parker's parts were manufactured "prior to 1984," and Plaintiffs have also previously admitted that "[t]he original manufacture of the subject vacuum pump appear[s] to have exceed[ed] the 18 year GARA Statute of Repose." Ex. A (Pls.' Opp'n to Parker) at 6, 11. Plaintiffs have also not presented any evidence or argument to challenge Parker's assertion that the design of its vacuum pumps is more than eighteen years old. See Ex. F (Scholz Dep.) at 41, 46, 599 (testifying that Parker's design of its vacuum pump was introduced in 1972). Plaintiffs now argue that GARA's statute of repose should be "renewed" upon overhaul. However, the cases relied upon by Plaintiffs are not GARA cases, and they restarted statutes of repose periods upon overhaul only with respect to defendants who performed the overhaul. Thus, GARA's statute of repose period with respect to Aero might start running in 1992, but with respect to Parker there is no basis for restarting the repose period in 1992. Plaintiffs concede that the Parker pump "may be over 18 years." Pls.' Opp'n, docket no. 158, at 19.

Accordingly, the Court GRANTS summary judgment and applies GARA to preclude Plaintiffs' product defect claim against Parker to the extent that it is based upon an assertion of a defective vacuum pump manufactured and/or designed by Parker.

Parker next contends that Plaintiffs' "failure to warn" claim is barred by GARA's statute of repose because a failure to warn does not amount to a "replacement" of a component part and therefore does not implicate GARA's rolling provision. GARA's rolling provision extends the limitation period "with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused

ORDER - 14

such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition." GARA § 2(a)(2).

Two Ninth Circuit cases have interpreted GARA's rolling provision. In Caldwell v. Enstrom Helicopter Corp., the Ninth Circuit held that a revised flight manual is not a separate product, but rather is a "part" of a helicopter within the meaning of GARA's rolling provision. 230 F.3d 1155, 1157 (9th Cir. 2000). In so holding, the Caldwell court noted that the flight manual is required by federal regulations and "is an integral part of the general aviation aircraft product that a manufacturer sells." Id. The plaintiffs in Caldwell alleged that the revised flight manual was the defective part that caused the helicopter to crash because it did not include relevant information about the limits on the fuel tank's ability to burn the last two gallons of fuel. Id. at 1156-57. The Caldwell court noted that the federal regulations specifically required that a flight manual be included with a helicopter and that it include information about a gas tank's unusable fuel supply if the unusable portion exceeds one gallon. Id. at 1157.

Subsequently, the Ninth Circuit held that "a failure to warn is decidedly not the same as replacing a component part with a new one." Lyon v. Agusta S.P.A., 252 F.3d 1078, 1088 (9th Cir. 2001). The Ninth Circuit in Lyon *rejected* the plaintiffs' argument "that a failure to warn about a newly perceived problem also amounts to something like a replacement of a component part because it breaches an alleged continuing duty to upgrade and update." Id. The Lyon court reasoned that "[w]ere that so, GARA would have little value to manufacturers because the plaintiff could always argue that an 18-year period commenced if the manufacturer did nothing at all, while simultaneously arguing that if the manufacturer did do something that, too, would start a new 18-year period running." Id. The Lyon court pointed out that "in Caldwell we alluded to the fact that a revision to a manual was quite different from a failure to warn." Id. (citing Caldwell at 1157).

Although Plaintiffs assert in their opposition brief that "[t]hese are not failure to warn issues," Pls.' Opp'n at 19, their product defect claim alleges that Parker "failed to provide any adequate warnings of the dangers which were not readily apparent to Plaintiffs' Decedents," SAC ¶ 56, and Plaintiffs assert in their briefs that Parker's mailings between 1998 and 2003 were "allegedly defective in what they say and also in what they don't say respecting the vacuum pump." Pls.' Opp'n at 19. Plaintiffs assert that "Parker had a long history of knowing the various hazards associated with the vacuum pump such as sudden engine stoppage, contaminants, wear, etc." Id. at 17. Plaintiffs cannot now deny that they are raising failure to warn issues. Parker asserts that its mailings are issued independently of any flight manual by the aircraft manufacturer and are not mandated by the FAA. Plaintiffs have failed to demonstrate that any of Parker's mailings are integral parts of the aircraft akin to the flight manual in Caldwell, and have thus failed to show that GARA's rolling provision should be applied.

Accordingly, GARA's statute of repose bars Plaintiffs' product defect claim in its entirety.

### E. Conclusion Re: Defendant Parker's Motion for Summary Judgment

The Court GRANTS Parker Hannifin Corporation's Motion for Summary Judgment, docket no. 142, and DISMISSES Plaintiffs' product defect claim against Parker. Plaintiffs have provided no evidence to raise a genuine issue of material fact that the pump that left the Parker facility in 1984 was not substantially changed by Aero's overhaul process. In the alternative, GARA's eighteen-year statute of repose bars the claim.

IT IS SO ORDERED.

DATED this 7th day of November, 2006.

Thomas S. Zilly
United States District Judge

ORDER - 16